APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
Email: april@aprilhollingsworthlaw.com
Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **SHAWN EGGETT** and **TAMMY EGGETT;**<br><br>Plaintiffs;<br><br>vs.<br><br>**BODELL CONSTRUCTION COMPANY,** a corporation; **ROBERT A. MAYER,** an individual; and **JEFF HOPKINS**, an individual;<br><br>Defendants. | **COMPLAINT**<br><br>**(Jury Demanded)**<br><br>Case No. 1:18-cv-00127-RJS<br><br>Judge Robert J. Shelby |

COMES NOW PLAINTIFFS SHAWN AND TAMMY EGGETT to complain and allege against Defendants Bodell Construction Company, Robert A. Mayer, and Jeff Hopkins, as follows:

**NATURE OF THE CASE**

This is an action against Bodell Construction Company ("Bodell"), and two of its directors, Robert A. Mayer and Jeff Hopkins, seeking damages and redress for deprivation of, interference with, and retaliation in regards to Plaintiffs' rights protected by the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, et seq.; the Americans with Disabilities Act, as amended ("ADAA") 42 U.S.C. § 12101, et seq; and state law.

1

## PARTIES

1. Plaintiffs Shawn Eggett ("Mr. Eggett") and Tammy Eggett ("Ms. Eggett," collectively "the Eggetts") are individuals residing in Davis County, Utah.

2. Defendant Bodell Construction is a Utah corporation with its principal place of business in the state of Utah, and was the employer of both Mr. and Ms. Eggett in the state of Utah.

3. Robert A. Mayer is a Director of Bodell, and was involved in the decision to terminate the Eggetts.

4. Jeff Hopkins is also a Director of Bodell, and was involved in the decision to terminate the Eggetts.

## JURISDICTION AND VENUE

5. This court has jurisdiction over the actions asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

7. Mr. Eggett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on age and a perceived disability.

8. The EEOC issued Mr. Eggett a Notice of Right to Sue on July 25, 2018 (attached as Exhibit A).  Mr. Eggett has satisfied all administrative prerequisites necessary to file this lawsuit.

## FACTUAL ALLEGATIONS

9. Mr. Eggett worked for Bodell in Salt Lake City, Utah for over 9 years prior to his termination on February 10, 2017.

10. In 2017, at the time of his termination, Mr. Eggett had been a superintendent for more than six years. Prior to his termination, Mr. Eggett's performance evaluations were consistently excellent.

11. Ms. Eggett worked as a field secretary for Bodell for seven years prior to her termination on February 10, 2017.

12. In the spring of 2015, Mr. Eggett sustained an on-the-job injury to his back. At the direction of a Bodell project manager, Mr. Eggett did not file a workers' compensation claim at the time of the injury. Bodell discouraged Mr. Egget from filing a workers' compensation claim because of concerns that such a claim would damage the company's safety record. Instead, Bodell assured Mr. Eggett that if he did not file a workers' compensation claim, his insurance (which the company paid for) would cover the injury.

13. Mr. Eggett's insurance did in fact pay his medical bills in 2015 related to his on-the-job injury. Additionally, Bodell allowed Mr. Eggett to take time off to recover from the injury and paid him for 50 hours/week during his recovery period—which was approximately five weeks.

14. However, Mr. Eggett's back problems stemming from this injury never entirely dissipated. In addition to back pain, Mr. Eggett also experienced numbness in his legs and feet, possibly caused by nerve damage from his back injury.

15. On December 23, 2016, Mr. Eggett had an MRI done on his back. Due to an assignment out of state, Mr. Eggett was unable to go back to his doctor until February 3, 2017. Mr. Eggett managed to stop through Salt Lake while en route from Albuquerque to Reno for vacation. While in Salt Lake on his layover, he scheduled to have his MRI results read. Mr. Eggett's doctor informed him that he needed surgery to repair his back injury.

16. After receiving this news from his doctor, Mr. Eggett called Peter Knight ("Mr. Knight"), a project manager at Bodell. Mr. Eggett informed Mr. Knight that he would need surgery related to his previous on-the-job injury.

17. Mr. Eggett's back surgery would incapacitate him and require Ms. Eggett to also take time off in order to care for her husband.

18. On Monday, February 6, 2017, Mr. Eggett ran into Jeff Hopkins ("Mr. Hopkins"), who was in charge of Quality Assurance and Quality Control for the company, at the Salt Lake City airport. Both men were on their way to Albuquerque to a worksite. On the flight, Mr. Eggett told Mr. Hopkins about his need for surgery and suggested he would need to schedule the surgery after he finished the project he was currently working on.

19. Four days later on February 10, 2017, Mr. Hopkins and Mr. Mayer terminated Mr. Eggett. Mr. Hopkins claimed Mr. Eggett's termination was due to a complaint that he smelled like alcohol on some unspecified day.

20. That same day, Mr. Hopkins told Ms. Eggett that "due to the circumstances" it would be best if she no longer worked for Bodell. Ms. Eggett took this to mean that her employment was terminated as well.

21. Prior to Mr. Eggett's termination, Bodell ostensibly received an anonymous email on February 8, 2017, alleging that a supervisor smelled of alcohol. The email did not identify Mr. Eggett by name or otherwise. Furthermore, the email alleged that many employees were coming to work smelling like alcohol, yet Mr. Eggett was the only one terminated for such behavior, further suggesting that Bodell's justification for his termination was pretextual.

22. Mr. Eggett was not, nor had he ever been, under the influence of alcohol while at work.

23. Mr. Eggett did not have any documented performance issues.

24. Bodell has a substance abuse policy that provides for drug and alcohol testing if an employee is suspected of drug or alcohol use at work. Yet Mr. Eggett was not tested for drugs or alcohol the day that he was terminated.

25. In fact, Mr. Eggett was only tested for drugs and alcohol on one occasion—September 7, 2016. Mr. Eggett tested negative for drugs on that occasion, and the breathalyzer revealed that Mr. Eggett did not have alcohol in his system.

26. In light of the lack of documented performance issues or evidence that Mr. Eggett had ever gone to work under the influence of alcohol, Bodell's justification for terminating Mr. Eggett was based purely on a suspicion that Mr. Eggett was an addict.

27. At the time of his termination, Mr. Eggett was 55 years old. This made him the oldest superintendent employed by Bodell.

28. Mr. Eggett underwent back surgery on April 14, 2017. At that point, he was covering his own insurance costs.

29. Mr. Eggett has suffered economic damages due to his termination, as well as non-economic damages due to the emotional distress caused by his termination.

**FIRST CAUSE OF ACTION**
**(Violation of the FMLA—Interference - against all Defendants)**

30. Paragraphs 1 through 29 are incorporated as if fully set forth herein.

31. The Eggetts had both worked for Bodell for more than 12 months and had each worked at least 1,250 hours in the previous 12-month period, thus making them eligible for FMLA leave under 29 U.S.C. § 2611(2)(A). Neither Mr. Eggett nor Ms. Eggett had previously taken FMLA leave, and therefore had not exhausted their FMLA entitlement.

32. Mr. Eggett required FMLA leave to allow him to have back surgery and for a period afterwards to recover.

33. Ms. Eggett required FMLA leave to allow her to care for Mr. Eggett after his back surgery.

34. Mr. Eggett effectively made a request for time off for his own serious medical condition when he informed Mr. Knight and Mr. Hopkins that he would need time off for surgery after he finished the project he was then working on.

35. Instead of informing Mr. Eggett of his right to leave under the FMLA or allowing him time off for surgery, Bodell (through Mr. Mayer and Mr. Hopkins) terminated his employment, thus interfering with his FMLA rights under 29 U.S.C. § 2615(a)(1).

36. Defendants terminated Ms. Eggett when it became apparent that she would also need to take time off for Mr. Eggett's surgery, thus interfering with her FMLA rights under

29 U.S.C. § 2615(a)(1).

37. Defendants' conduct violated the FMLA, 29 U.S.C. §2615(a)(1), and pursuant to 29 U.S.C. §2617, they are liable to the Eggetts for all wages and wage increases to which they would have been entitled but for Defendants' conduct, as well as profit sharing, employee benefits, and other compensation that they lost due to Defendants' violations of the FMLA, plus special and out-of-pocket damages, prejudgment interest on their economic losses, and an additional amount as liquidated damages equal to their damages plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and such other and further relief as this Court deems appropriate (including front pay).

### SECOND CAUSE OF ACTION
### (Violation of the FMLA—Retaliation - against all Defendants)

38. Paragraphs 1 through 37 are incorporated as if fully set forth herein.

39. In addition to interfering with Mr. Eggett's FMLA rights, as set forth above, Defendants also retaliated against him for exercising and/or attempting to exercise his FMLA rights when it terminated his employment just four days after he informed Mr. Hopkins that he would need to take FMLA for his back surgery.

40. Defendants' conduct violated the FMLA, 29 U.S.C. §2615(a)(2), and they are liable to Mr. Eggett for all wages and wage increases, health insurance and all other employee benefits and other compensation to which he would have been entitled but for Defendants' conduct, as well as prejudgment interest on those losses, and an additional amount as liquidated damages equal to his damages plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court

deems appropriate (including front-pay and payment of medical bills).

### THIRD CAUSE OF ACTION
### (Violation of the ADAA - against Bodell)

41. Paragraphs 1 through 40 are incorporated as if fully set forth herein.

42. At all times relevant hereto, Mr. Eggett was an employee of Bodell within the meaning of 42 U.S.C. § 12111(4).

43. Bodell is a covered entity within the meaning of the ADAA, 42 U.S.C. § 12101, *et seq.*

44. The ADAA defines a "qualified individual" as being inclusive of an individual who "is erroneously regarded as engaging" in the use of illegal drugs or alcohol by their employer. 42 U.S.C. § 12114(b)(3).

45. Although Mr. Eggett is not an alcoholic, Bodell regarded him as having such a disability. Bodell discriminated against Mr. Eggett on the basis of his perceived disability by explicitly terminating his employment on the basis of the belief that he was an alcoholic, despite the absence of performance problems, in violation of the ADAA.

46. As a result of this violation, Mr. Eggett is entitled to recover damages for lost wages and benefits. Mr. Eggett is also entitled to compensatory damages in an amount to be proven at trial.

47. The actions of Bodell were willful and intentional and therefore, Mr. Eggett is entitled to punitive damages in an amount to be proven at trial.

48. Mr. Eggett is also entitled to recover attorneys' fees and costs incurred in bringing this action.

**FOURTH CAUSE OF ACTION**
**(Wrongful Termination in Violation of Public Policy - against Bodell)**

49. Paragraphs 1 through 48 are incorporated as if fully set forth herein.

50. When Mr. Eggett injured his back in the spring of 2015 while working for Bodell, a project manager asked him not to file for workers' compensation because Bodell was concerned that doings so would damage its safety record.

51. Bodell promised Mr. Eggett that his health insurance, which the company paid for, would cover his on-the-job injury, and encouraged him not to not file for workers' compensation, and to lie if asked by the insurance company whether the injury happened at work.

52. When Mr. Eggett informed Bodell in February 2017 that his back problems caused by his on-the-job injury would require another surgery, he was promptly terminated four days later.

53. The right of employees to seek and obtain workers' compensation benefits when they have suffered an injury in the course of their employment is a clearly defined public policy, recognized both by statute and by case law.

54. Further, the right to seek workers' compensation benefits implicates not only the rights of Mr. Eggett but the rights of all employees in Utah, and has an overreaching importance to the public as a whole. Therefore, the right to seek workers' compensation benefits constitutes a substantial public policy.

55. Mr. Eggett's conduct, in exercising his legal rights by seeking benefits pursuant to Utah's Workers' Compensation Act, *see* Utah Code 34A-2-101 et seq., implicates this clear and substantial public policy.

56. Bodell dissuaded Mr. Eggett from filing a worker's compensation claim when his

injury occurred in 2015.

57. When Mr. Eggett informed Bodell in 2017 that his on-the-job injury required another surgery, he was terminated as a result.

58. Bodell's termination of Mr. Eggett violated a clear and substantial public policy.

59. Bodell is liable to Mr. Eggett for all damages that flow from his termination and are recoverable pursuant to Utah's common law, including but not limited to lost wages, lost future wages, the value of lost benefits, compensatory damages, and consequential damages, including attorneys' fees.

60. Further, because Bodell acted with malice, or with reckless indifference to the legal rights of Mr. Eggett, Bodell should also be required to pay punitive damages, in an amount to be determined by the jury.

**FIFTH CAUSE OF ACTION**
**(Discrimination on the Basis of Age in Violation of ADEAA - against Bodell)**

61. Paragraphs 1 through 60 are incorporated as if fully set forth herein.

62. At the time of his termination, Mr. Eggett was the oldest superintendent employed by Bodell.

63. Bodell discriminated against Mr. Eggett on the basis of his age and terminated his employment for pretextual reasons.

64. Mr. Eggett has suffered emotional distress, pain, and suffering due to Bodell's intentional conduct; therefore, he is entitled to compensatory damages in an amount to be proven at trial.

65. Bodell acted with malice or reckless disregard of Mr. Eggett's federally protected right to work in an environment that is not pervaded with discrimination; therefore, Bodell is liable for punitive damages.

66. Mr. Eggett is also entitled to recover his attorneys' fees and other costs of this action.

## JURY DEMAND

Mr. Eggett, by and through his counsel, hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues that are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. and Ms. Eggett pray for judgment against Defendant as follows:

1. For an order and judgment against Bodell for appropriate back pay, front pay, and reimbursement for any other of Mr. Eggett and Ms. Eggett's pecuniary losses, including lost benefits, and liquidated damages equal to those amounts;

2. For Mr. Eggett's compensatory damages, including his emotional distress caused by Bodell's actions;

3. For an order reinstating Mr. Eggett and Ms. Eggett's employment with Bodell, or front pay in lieu of reinstatement;

4. For the Eggett's reasonable attorneys' fees and costs of court;

5. For punitive damages in substantial, appropriate, and reasonable amounts, and

6. For such further and other relief the court deems appropriate.

DATED this 9th day of October, 2018.

**HOLLINGSWORTH LAW OFFICE, LLC**

　/s/ April L. Hollingsworth　

April L. Hollingsworth
Attorneys for Plaintiffs